IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Erick Elton Hewins, ) | Case No. 6:15-cv-04320-MGL-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Derick Loftis, Charles Cothran,[1] ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on cross-motions for summary judgment. [Docs. 30; 46.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

This action was filed on October 20, 2015, alleging violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.[2] [Doc. 1.] Plaintiff, with leave of this Court, amended his Complaint on February 3, 2016. [Doc. 1-7.] On February 8, 2016, Plaintiff's motion for summary judgment was filed; and he attached an affidavit setting forth facts and arguments in support of his claims. [Docs. 30; 30-1.] Defendants filed a motion for summary judgment on March 8, 2016. [Doc. 46.] The same day, pursuant to *Roseboro*

---

[1] Defendants Joyce Montz and Greenville City Police Department, initially named in the Complaint, were dismissed on January 15, 2016. [Doc. 24.]

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, his Complaint was filed on October 20, 2015. [Doc. 1-2 at 2 (envelope, stamped as received by the prison mailroom on October 20, 2015).]

*v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 48.] Plaintiff filed a response in opposition to Defendants' motion for summary judgment on March 21, 2016. [Doc. 51.] Accordingly, the motions are ripe for review.

## BACKGROUND

The factual history giving rise to the instant action has been taken directly from *State v. Hewins*, 760 S.E.2d 814 (S.C. 2014):[3]

> On September 15, 2009 at approximately 11:45 p.m., Officer Charles Cothran of the Greenville Police Department was patrolling the area of Main Street and Stone Avenue when he observed a gold Cadillac make a left turn using a "non-turning lane." As a result of the improper turn, Officer Cothran signaled for the vehicle to stop and Hewins pulled over into a nearby parking lot. Officer Cothran testified that earlier in the evening he had seen Hewins driving this vehicle on two occasions in a "high drug area."
>
> Officer Cothran approached the vehicle and requested that Hewins provide his driver's license, proof of insurance, and vehicle registration. According to Officer Cothran, Hewins was "extremely nervous," spoke with a "quivering" voice, and was rapidly breathing. Due to Hewins's behavior, Officer Cothran requested a backup unit. Because Hewins was unable to locate his proof of insurance or vehicle registration, Officer Cothran returned to his patrol car and searched the computer database for this information and confirmed the vehicle was registered to Hewins.
>
> As Officer Cothran was writing a warning citation, Officer Michael Loftis, a K–9 officer, arrived at the location. After Officer Cothran completed writing the warning citation, he returned to give it to Hewins. When he approached the vehicle, he noticed that Hewins remained nervous and "had not calmed down" despite the fact that he was not being given a traffic

---

[3] Plaintiff attached a copy of the state court order to his original Complaint. [Doc. 1-1.]

> ticket. Based on this behavior, Officer Cothran asked Hewins to exit the vehicle for safety reasons. He then conducted a pat down of Hewins and questioned him as to whether he had any guns, drugs, or explosives. Officer Cothran stated Hewins quickly responded that he did not have drugs and continued to exhibit nervous behaviors. Officer Cothran indicated this response made him suspicious. As a result, he asked Hewins for consent to search the vehicle. When Hewins refused, Officer Loftis proceeded to walk his drug-detection dog around the vehicle. After Officer Loftis secured the dog, he informed Officer Cothran that the dog had "alerted" to the driver's side door. In turn, Officer Cothran conducted a search of the vehicle. The search of the center armrest console revealed a mini-bottle of vodka that had been opened and a Tylenol bottle containing two, small "rock-like white pebbles." A field test of the substance indicated the presence of cocaine. Officer Cothran arrested Hewins for possession of crack cocaine and issued him a ticket for the open container violation.
>
> On October 8, 2009, Hewins appeared in municipal court and was convicted of the open container charge. The municipal court sentenced Hewins to time served and ordered the payment of a fine in the amount of $262.50. Based on his misunderstanding that Hewins had been convicted of possession of crack cocaine in municipal court, Officer Cothran authorized the destruction of the drug evidence.
>
> On May 4, 2010, a Greenville County grand jury indicted Hewins for possession of crack cocaine. Just prior to the start of the trial, Hewins moved to suppress the drug evidence on the ground the search was unlawful. Although counsel for Hewins admitted the initial traffic stop was valid, he asserted the purpose of the stop was concluded after Officer Cothran issued a warning citation for the traffic offense. Counsel maintained that once the traffic stop was concluded any further detention or search was unlawful.

*Id.* at 817–18.

Proceeding to the merits of Plaintiff's suppression claim, the Supreme Court of South Carolina agreed with Plaintiff that Officer Cothran exceeded the scope of the stop in violation of the Fourth Amendment. *Id.* at 825–26. Finding the drug evidence should have

3

been suppressed, the court reversed Plaintiff's conviction for possession of crack cocaine. *Id.* at 826.

Plaintiff filed the instant action against Defendants in their individual capacities, pursuant to 42 U.S.C. § 1983, for violations of his rights under the Fourth, Eighth, and Fourteenth Amendments. [Doc. 1-7.] Plaintiff also raises torts claims under South Carolina law. [*Id.*] Plaintiff seeks compensatory and punitive damages, and any other relief the Court deems appropriate. [*Id.*]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Requirements for a Cause of Action Under § 1983

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983

4

"'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed

5

of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue they are entitled to summary judgment because Plaintiff has failed to establish any personal involvement on the part of Defendant Derick Loftis; Plaintiff has failed to establish any claims that rise to the level of a constitutional deprivation; even if Plaintiff could establish a claim against Defendants that rises to the level of a constitutional deprivation, Defendants would still be entitled to qualified immunity; and any state law claims fail as a matter of law. [Doc. 46-2.] Plaintiff asserts he is entitled to summary judgment on the merits. [Doc. 30.] After a careful review of the record, the Court finds summary judgment is inappropriate.

**Section 1983 Claims**

Plaintiff brings suit under 42 U.S.C. § 1983, which allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey*, 526 U.S. at 707. As explained above, to state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liberally construing Plaintiff's Complaint, he asserts Defendants subjected him to an unreasonable detention, search, unlawful seizure,

8

and false imprisonment in violation of the Fourth Amendment. [Doc. 1-7 at 1.] Plaintiff further asserts the one year he spent incarcerated prior to his conviction being overturned resulted in cruel and unusual punishment in violation of the Eighth Amendment. [Doc. 30-1 at 3–4.] Additionally, Plaintiff appears to assert his Fourteenth Amendment Due Process rights were violated when Cothran destroyed, prior to trial, the alleged drugs found as a result of the unlawful search, and failed to use his patrol car dash-cam during the stop. [Doc. 30-1 at 2.]

### *Fourth Amendment*

"The Fourth Amendment protects against unreasonable searches and seizures." *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (internal quotation marks and citations omitted). "A government agent's search is unreasonable when it infringes on an expectation of privacy that society is prepared to consider reasonable." *Id.*

In *Terry v. Ohio*, the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The officer must be able to articulate something more than an "inchoate and unparticularized suspicion or a 'hunch'. . . " *Terry*, 392 U.S. at 27. It is well established that the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 810 (1996). The Fourth Amendment further requires that an investigatory stop be reasonable in its scope in addition to being reasonable at its inception; that is, the officer's actions must be reasonably related in scope to the circumstances that justified the stop in the first place. *Terry*, 392 U.S. at 19–20; *see*

*United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011). During a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation, but "[a]ny further detention for questioning is beyond the scope of the *Terry* stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." *United States v. Rusher*, 966 F.2d 868, 876–77 (4th Cir. 1992). In determining whether reasonable suspicion exists, courts may credit "the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993). In addition, courts must look at the totality of the circumstances and consider the "cumulative information available to the officer . . . " *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). "[I]f sufficient objective evidence exists to demonstrate reasonable suspicion, a *Terry* stop is justified regardless of a police officer's subjective intent." *Id.*

To establish a § 1983 claim based on a Fourth Amendment violation for false imprisonment, a plaintiff must show that a seizure was effected without probable cause. *See Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014); *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002).

### Eighth Amendment

The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[T]he treatment a prisoner receives in prison and the conditions under which prisoner is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The conditions of an inmate's

confinement violate the Eighth Amendment when an inmate can show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials."  *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

### *Fourteenth Amendment*

The Fourteenth Amendment provides that, "no state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Under 42 U.S.C. § 1983, three kinds of Fourteenth Amendment Due Process claims may be brought: (1) claims for the denial of those specific protections in the Bill of Rights that have been made applicable to the states; (2) claims under the substantive component of the Due Process Clause that bars certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them; and (3) claims for violations of procedural due process, which prohibits the deprivation of life, liberty, or property without fair procedure.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal citations and quotations omitted).

### *Analysis*

Defendants' motion for summary judgment fails to address Plaintiff's Fourth, Eighth, or Fourteenth Amendment claims.  [*See* Doc. 46-2 (Defendants' motion provides the § 1983 and qualified immunity standards but fails to apply the facts of the case to the relevant standards).] Based on the record before the Court, because Defendants' motion for summary judgment fails to address the merits of Plaintiff's constitutional claims, the Court finds summary judgment should be denied as to Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims.

**State Law Claims**

Federal courts are allowed to hear and decide state law claims only in conjunction with federal law claims, through the exercise of "supplemental jurisdiction." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998).

### *False Arrest, False Imprisonment, and Malicious Prosecution*

Under South Carolina law, to prevail on a claim for false arrest or imprisonment, Plaintiff must prove both that he was deprived of his liberty and that the deprivation was done without lawful justification. *Jones v. City of Columbia*, 389 S.E.2d 662 (S.C.1990). In order "to maintain an action for malicious prosecution under South Carolina law, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage." *Law v. S.C. Dep't of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006) (quoting *Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 608 (S.C. 1965)).

In his affidavit attached to Defendants' motion for summary judgment, Cothran presents the information which led him to arrest Plaintiff. [*See* Doc. 46-1.] Cothran states that on September 15, 2009, while on patrol, he conducted a traffic stop of Plaintiff's vehicle after observing the vehicle make an improper turn. [*Id.* ¶ 2.] After approaching the vehicle, Cothran asserts Plaintiff "was extremely nervous and his voice quivered when speaking" and his "breath was labored and rapid." [*Id.* ¶ 3.] Cothran requested the necessary paperwork and "indicated that [he] intended to issue a warning for the offense thinking this would calm the driver's nerves. The driver continued to appear unsettled and

at approximately this point, I requested back up from Private First Class Loftis." [*Id.*] Next, he states:

> [Plaintiff] was ultimately unable to locate his registration an insurance documentation and advised me that he believed he had left them at home. At this point, I returned to my patrol vehicle and began to complete my standard checks (warrants, driver's license status, any criminal record)[.] As I was completing my warning ticket, officer Loftis arrived. At this point, I went back to [Plaintiff's] vehicle and requested that he exit and I explained the warning to [Plaintiff]. I asked him if there was anything inside his vehicle that I needed to know about such as drugs, guns, or explosives. [Plaintiff] answered very quickly when I mentioned drugs but was much slower in answering concerning guns or explosives. During my questioning, [Plaintiff] avoided eye contact with me. Due to his nervous behavior and his reaction when I asked about what may be inside the vehicle, I asked [Plaintiff] for consent to search his vehicle. He hesitated and then refused to consent. At this point, I explained that officer Loftis was going to walk his canine around the vehicle and asked [Plaintiff], multiple times, to stand with me while the canine walked around his vehicle. [Plaintiff's] nervous behavior led me to believe he was concerned about the canine's presence. At this point, officer Loftis secured his canine and advised me that the canine had alerted on [Plaintiff's] vehicle. I then began to search the vehicle and when I checked the center arm rest, I noticed a small Tylenol bottle containing what appeared to be small white rock like pebbles as well as an open mini bottle of Smirnoff vodka. The rock like pebbles in the Tylenol bottle were consistent with what is referred to on the street as "crack" which is cocaine-based substance. At this point, [Plaintiff] was placed under arrest and placed in the rear [o]f my patrol vehicle. . .

[*Id.* ¶¶ 4, 5.] Cothran asserts that he had reasonable suspicion that the stop should be extended and that probable cause existed to search Plaintiff's vehicle. [*Id.* ¶ 8.]

Plaintiff does not appear to challenge the initial stop; however, he does challenge his continued detention and subsequent seizure. In support of his arguments, Plaintiff cites to the Supreme Court of South Carolina's decision, which found:

13

> Officer Cothran's continued detention of Hewins exceeded the scope of the traffic stop and constituted an additional seizure for purposes of the Fourth Amendment . . . According to Officer Cothran, he decided to conduct the pat down, continue questioning, and deploy the drug-detection dog based on the following information: (1) earlier in the evening he had seen Hewins drive in a known drug area; (2) Hewins remained nervous despite being given a warning citation rather than a traffic ticket; and (3) when questioned, Hewins quickly responded that he did not have any drugs. We conclude that these facts did not provide Officer Cothran with a reasonable suspicion that criminal activity was afoot. An observation that Hewins was nervous, drove through a known drug area, and Hewins's immediate denial of possessing drugs, cannot justify Officer Cothran's decision to detain Hewins. We find the aggregate of these circumstances was not sufficient to create an objective basis for extending the scope of the traffic stop.
>
> Therefore, we hold the continued detention of Hewins, which included the deployment of the drug-detection dog, was illegal and the drugs discovered during the search of the vehicle should have been suppressed.

*Hewins*, 760 S.E. 2d at 825–26.

Based on the record presented, the Court finds there is a genuine dispute of material fact as to whether Defendants had reasonable suspicion to extend the scope of the traffic stop and place Plaintiff under arrest. Because the material facts are disputed, the Court finds Defendants are not entitled to summary judgment with respect to Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution.

### ***Assault and Battery***

Defendants submit that Plaintiff sets forth no facts to support his assault and battery claim; therefore, the claim must be dismissed. [Doc. 46-2 at 4.] Plaintiff asserts Defendants are liable for assault and battery arising from his arrest and illegal

14

incarceration. [Doc. 1-7 at 2; Doc. 51 at 7.] Further, Plaintiff argues that the use of force to effectuate an illegal arrest is unreasonable. [Doc. 51-1 at 1–2.]

Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn–Dixie Greenville, Inc.*, 456 S.E.2d 429, 432 (S.C. Ct. App.1995). It is well settled that "[a]lthough a law enforcement officer is privileged to use lawful force, he is nevertheless liable for assault if he uses force greater than is reasonably necessary under the circumstances." *Moody v. Ferguson*, 732 F.Supp. 627, 632 (D.S.C.1989); *see also Roberts v. City of Forest Acres*, 902 F.Supp. 662, 671–72 (D.S.C. 1995). In his response to Defendants' motion for summary judgment, Plaintiff points to *Horton v. City of Columbia* which states, "South Carolina appears to be in the minority of jurisdictions where an unlawful arrest, even in the absence of excessive force, can support a claim for assault and battery." *Horton v. City of Columbia*, Case No. 2012-211168, 2014 WL 10009645, at *3 (S.C. Ct. App. Feb. 26, 2014) (unpublished).

As the Court set forth in the above discussion, a factual dispute exists as to whether Defendants' actions during the traffic stop and subsequent arrest were objectively reasonable in light of the circumstances. Accordingly, the Court finds that a genuine issue of material fact exists as to whether the scope of the traffic stop was reasonable and the arrest was supported by probable cause. For this reason, summary judgment on Plaintiff's cause of action for assault and battery against Defendants is not appropriate at this time.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Plaintiff's motion for summary judgment [Doc. 30] be DENIED;[4] and Defendants' motion for summary judgment [Doc. 46] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

May 19, 2016
Greenville, South Carolina

---

[4] Plaintiff's motion for summary judgment states only that he "move[s] this Court for an order granting [him] summary judgment on the merits of the Complaint." [Doc. 30.] As stated herein, the Supreme Court of South Carolina determined that Cothran's continued detention of Plaintiff exceeded the scope of the traffic stop and was illegal. *See Hewins*, 760 S.E.2d at 825–26. The court however, examined Plaintiff's arguments in the context of a suppression claim, and not under § 1983 standards. Because, as discussed, the Court finds that genuine issues of material fact remain on Plaintiff's claims, he is not entitled to summary judgment.